138

**CIRCUIT COURT OF LOUDOUN COUNTY**

In re Estate of
David M. Wakefield

Case No. (Fiduciary) 8637

BY JUDGE JAMES H. CHAMBLIN

August 21, 2002

I have been advised that on August 19, 2002, Judge McCahill scheduled argument before me on October 8, 2002, at 3:00 p.m. for one hour on the Exceptions of Ruth M. Wakefield, by her conservator, Kyle Elizabeth Skopic, to the Commissioner's Report of Debts and Demands filed by William B. Hanes, Commissioner of Accounts. Judge McCahill has advised me that counsel raised an issue at scheduling as to whether I intended to enter an order directing Mr. Hanes to submit to the Court the evidence presented to him at the Debts and Demands hearing.

By the order entered July 17, 2002, I had intended that a proceeding be scheduled "to determine the evidence presented to the Commissioner." Because counsel have elected to schedule argument on the Exceptions without scheduling a proceeding to determine the evidence presented to the Commissioner, I will enter no further orders on my own. Counsel can proceed on October 8, 2002, with all parties being well aware that the Report is presumed to be correct, and the Exceptions cannot be sustained without a finding that the evidence presented to the Commissioner does not support the Report. If there is nothing to indicate the evidence presented to the Commissioner, then the presumption will prevail.

October 21, 2002

This matter came before the Court on October 8, 2002, for argument on the *Exceptions to Commissioner's Report of Debts and Demands* filed by Ruth M. Wakefield by her Conservator, Kyle Elizabeth Skopic. After consideration of the evidence presented to the Commissioner of Accounts, his Report, the additional evidence presented to the Court, and the argument of counsel, the Exceptions are overruled.

On February 12, 1996, Ruth M. Wakefield executed a Durable Power of Attorney naming her son, David M. Wakefield, the decedent, as her Attorney-in-Fact. Paragraph (9) of the Power of Attorney provides:

(9) To make gifts on my behalf of my real and personal property to any of my descendants, including any descendant who may be serving as my Attorney-in-Fact. My Attorney-in-Fact shall have no duty to equalize such gifts between or among any such donees. In the event that my Attorney-in-Fact shall make any gifts to himself, such transfers may be made only for the health, education, maintenance, and support of my Attorney-in-Fact and not to discharge his obligation of support to any person whom my Attorney-in-Fact has a duty to support; the authority provided hereunder shall not be construed as a general power of appointment.

The Power of Attorney also provides, on page 6 thereof, the following:

My Attorney-in-Fact shall not incur any liability to me, my estate, my heirs, successors, or assigns for acting or refraining from acting hereunder, except for willful misconduct or gross negligence. My Attorney-in-Fact shall not have responsibility to make my assets productive of income, to increase the value of my estate, to diversify my investments, or to enter into transactions authorized herein, provided my Attorney-in-Fact believes such actions are in my best interests or in the best interests of my estate or those interested therein.

On February 20, 1996, David M. Wakefield, as Attorney-in-Fact for Ruth M. Wakefield, executed a Trust Agreement wherein Ruth M. Wakefield is the Settlor and David M. Wakefield is named as Trustee. As pertinent to this proceeding, the Trust Agreement in Schedule A lists the trust estate as "Synovus Trust Company Account Number 72-F114-01-0, presently titled: Synovus Trust Company as Custodian U/A/W Ruth M. Wakefield, dated December 27, 1985."

David M. Wakefield died April 18, 2000. On May 24, 2000, his will dated May 16, 1995, was admitted to probate by the Clerk of this Court. His wife, Marilyn B. Wakefield, qualified as Executor under his will. She is also the sole beneficiary under the will.

On April 16, 2001, Kyle Elizabeth Skopic, Conservator for Ruth M. Wakefield, filed a claim with William B. Hanes, Commissioner of Accounts, against the Estate of David M. Wakefield, in the amount of $120,000.00. The claim is summarized as follows:

1. Ruth M. Wakefield has been adjudicated as incapacitated, and a conservator has been appointed to manage and protect her assets.

2. Bank of America, the "substitute trustee" after the death of David M. Wakefield under the Trust Agreement, has verified to the Conservator that the following monies were taken from the Trust by David M. Wakefield, and designated as gifts:

*December 1998*:

| | |
|---|---|
| Gift to David M. Wakefield, Sr. | $10,000 |
| Gift to Marilyn Wakefield | $10,000 |
| Gift to David M. Wakefield, Jr. | $10,000 |
| Gift to Angela Wakefield | $10,000 |
| Gift to Christopher Wakefield | $10,000 |
| Gift to Susan Wakefield | $10,000 |
| Gift to Nicholas Wakefield | $10,000 |
| | $70,000 |

*November 1999*:

| | |
|---|---|
| Gift to David M. Wakefield, Sr. | $10,000 |
| Gift to Marilyn Wakefield | $10,000 |
| Gift to David M. Wakefield, Jr. | $10,000 |
| Gift to Angela Wakefield | $10,000 |
| Gift to Christopher Wakefield | $10,000 |
| | $50,000 |

3. Christopher M. Wakefield claims that neither he, nor Susan Wakefield, his wife, nor Nicholas Wakefield, his son, received such a gift.

4. David M. Wakefield held onto some, if not all, of the gift monies and failed to disburse the gift money as intended.

5. The gift monies should be returned to Ruth M. Wakefield.

On or about October 19, 2001, the Executor requested a Debts and Demands Hearing. The Commissioner of Accounts set the hearing for November 27, 2001.

On November 27, 2001, the following persons appeared at the Debts and Demands Hearing:

1. Marilyn Barnwell Wakefield, Executor of the decedent's estate, who is the decedent's surviving spouse and sole distributee under his Will;

2. David M. Wakefield, Jr., son of the decedent;

3. James E. Carr, Esquire, Counsel for the Executor;

4. Kyle Elizabeth Skopic, who qualified in the Circuit Court of Fairfax County, Virginia, as Conservator for Ruth M. Wakefield, the mother of the decedent.

No witnesses testified under oath at the hearing. The Conservator offered the following documents to the Commissioner to be considered as to the subject claim:

1. The Trust Agreement (Exhibit A);

2. The Durable Power of Attorney (Exhibit B);

3. Three pages listing financial transactions in 1997 and 1998 by NationsBank, and in 1999 by Bank of America (Exhibit C);

4. Copies of five checks, front and back, issued by Bank of America in 1999 (Exhibit D);

5. Copies of seven checks, front and back, issued by NationsBank in 1998 (Exhibit E).

At the hearing, the Conservator expanded the claim to include seven checks issued by NationsBank in November 1997, as follows:

| | |
|---|---|
| Gift to Stephen Hartwell | $10,000 |
| Gift to Christopher Wakefield | $10,000 |
| Gift to Nicholas Lockhart | $10,000 |
| Gift to Angela Wakefield | $10,000 |

| | |
|---|---|
| Gift to Marilyn Wakefield | $10,000 |
| Gift to David M. Wakefield, Jr. | $10,000 |
| Gift to David M. Wakefield, Sr. | $10,000 |
| | $70,000 |

At the hearing on November 27, 2001, the Conservator merely stated orally her claim. Her statements included considerable hearsay statements attributable to third parties. Counsel for the Executor objected numerous times to the hearsay. At the conclusion of the hearing, the Commissioner of Accounts kept the record open and continued the matter to January 29, 2002.

On January 29, 2002, the Conservator and counsel for the Executor appeared before the Commissioner of Accounts. At that time, the Conservator offered, and the Commissioner of Accounts received for his consideration copies of seven checks issued by NationsBank in November 1997. No testimony was offered under oath. Counsel for the Executor continued to object to hearsay statements offered by the Conservator in support of the claim.

The Commissioner of Accounts issued his report dated June 24, 2002. He denied the claim of Ruth M. Wakefield. The Commissioner of Accounts found that the alleged gifts made in 1997, 1998, and 1999 were not made from trust assets held under the Trust Agreement, but were made from her non-trust assets by David M. Wakefield as her Attorney-in-Fact under the Durable Power of Attorney. He further found that David M. Wakefield as Attorney-in-Fact directed NationsBank and Bank of America to issue nineteen checks in November 1997, December 1998, and December 1999 as listed above.

The last two paragraphs of the report set forth the Commissioner's reasoning. They read as follows.

There was no testimony, under oath, offered at the hearing to support the Conservator's claim, but she did submit for my consideration, copies of the back and front of each of the itemized checks, and she alleges that many if not all of the checks issued were actually endorsed by David M. Wakefield and deposited to his own account. The Conservator further alleges that three (3) of the named payees (Stephen Hartwell, Susan England, and Marilyn Wakefield) were not "descendants" of Ruth M. Wakefield, and that those checks were, therefore, issued outside the power and authority granted to David M. Wakefield under the Durable Power of Attorney. Finally, the hearsay statements of third parties were offered to suggest that

David M. Wakefield had no authority to issue these gift checks in the first place and that it was improper for him to deposit the funds to his own account.

Following a thorough review of The Ruth M. Wakefield Trust Agreement and Durable Power of Attorney, as well as the exhibits submitted and the respective arguments advanced in support of and against the Conservator's claim, I must conclude that David M. Wakefield's estate can only be found legally liable to reimburse his mother's Conservator if the evidence proved that he was guilty of "willful misconduct or gross negligence." Through no fault of the Conservator, the quality of the copies of the checks provided to the Conservator and submitted for my consideration were in most cases so poor as to be simply unascertainable, particularly as to the endorsements on the back of the checks. It is highly speculative, at best, to determine who made the endorsements on the back of the various checks, but since there was no direct evidence or proof of any kind concerning the circumstance surrounding the various endorsements, there simply is no credible evidence upon which to base a finding that David M. Wakefield was guilty of "willful misconduct or gross negligence." I, therefore, deny the Conservator's claim against this estate.

On July 9, 2002, the Conservator filed her exceptions to the report. Her exceptions are as follows:

1. The Commissioner found, and there is no disagreement to the finding, that David M. Wakefield, Sr., lacked authority to make gifts from the trust.

2. The checks at issue were written on a bank account titled in the name of the Trust with David M. Wakefield as Trustee.

3. Assuming, arguendo, that David M. Wakefield, Sr., had authority to make gifts, then the authority comes from the Durable Power of Attorney.

4. David M. Wakefield's authority to make gifts under the Power of Attorney is limited to gifts to descendants of Ruth M. Wakefield. Five (5) of the nineteen (19) checks were made payable to individuals who are not descendants of Ruth M. Wakefield.[1]

---

[1] November 1997: Steven Hartwell and Marilyn Wakefield; December 1998: Marilyn Wakefield and Susan England; December 1999: Marilyn Wakefield.

144

5. Two of the checks were made payable to Nicholas Lockhart, a minor. He is a descendant of Ruth M. Wakefield. However, he never received the payments. The checks were endorsed by David M. Wakefield, Sr.[2]

6. Three of the $10,000 checks issued in 1999 were drawn in the names of David Wakefield, Jr., Angela Wakefield, and Christopher Wakefield. The Decedent's estate acknowledged and stipulated that the checks were endorsed by Decedent and deposited into his own bank account. The other checks submitted at the hearing are clearly legible to the extent that it can be determined that they were endorsed by David M. Wakefield, Sr., as previously alleged herein.

7. The Commissioner's finding that there is no evidence upon which to base a finding that David M. Wakefield was "guilty of willful misconduct or gross negligence" is plainly wrong. Ruth M. Wakefield, by her Conservator, submits that one's act of converting to one's own property a gift check for $10,000 made payable to another is willful in nature. Such act is willful in nature insofar as it is not an act that is accidental or involuntary. It is further an act that rises to the level of misconduct, that being a forbidden act. Hence, it is an act of willful misconduct, or at a minimum, an act constituting gross negligence.

On September 12, 2002, the Commissioner of Accounts delivered to the Court the documents which he reviewed and considered in making his ruling denying the claim. The documents are made part of the record in this matter.

On October 8, 2002, at argument on the Exceptions, the following documents were offered by the Conservator to the court without objection:

1. The complete accounts for the years 1997, 1998, 1999, which include the three pages received at the Debts and Demands Hearing as Exhibit C;

2. Copy of the *Executor's Request for the Debts and Demands Hearing*;

3. Copy of the *Executor's Report to the Commissioner of Accounts of Claims Known to the Executor*, dated November 6, 2001.

Also, on October 8, 2002, the original transcripts of the proceedings of November 27, 2001, and January 29, 2002, were filed.

I have read the transcripts, the documents considered by the Commissioner of Accounts, and the documents submitted on October 8, 2002.

Each exception is discussed below.

The first exception does not appear to be an exception. I interpret it to be merely an acknowledgment by the Conservator that the Commissioner of

---

[2] The 1998 check to Nicholas Lockhart was endorsed by David M. Wakefield as Attorney-in-Fact.

Accounts was correct in his determination that David M. Wakefield did not have the authority as Trustee under Trust Agreement to make gifts from the trust assets. This determination is clearly correct.

The second exception seems to challenge the ruling of the Commissioner of Accounts that the alleged gifts were not made from trust assets, but were made from non-trust assets. The three pages of financial transactions received by the Commissioner of Accounts as Exhibit C do not indicate on their face that they pertain to the Ruth M. Wakefield Trust. There was nothing presented to connect the subject disbursements to the trust assets listed in Schedule A to the Trust Agreement. The complete accounts offered by the Conservator during argument on the Exceptions do not tend to show that the disbursements came from trust assets. The determination by the Commissioner of Accounts that the alleged gifts were made from non-trust assets is correct. The second exception is overruled.

The third exception assumes that David M. Wakefield had authority to make gifts. This is a correct assumption. As recognized in this exception the authority to make gifts comes from the Durable Power of Attorney. To that extent, the third exception is overruled.

The fourth, fifth, and sixth exceptions are not exceptions, but merely statements of what the Conservator feels are facts supporting the claim of Ruth M. Wakefield. I do not believe that the Commissioner of Accounts disagreed with these facts in making his ruling. Therefore, to the extent that these exceptions attempt to support the Conservator's argument in favor of the claim, they must be overruled.

The seventh and last exception merely asserts that the Commissioner of Accounts is incorrect in his ruling that there is no evidence on which to base a finding that David M. Wakefield was guilty of willful misconduct or gross negligence. It goes to the very basis of the denial of the claim.

This Court's consideration of the Exceptions is not a trial *de novo*. The report of the Commissioner of Accounts should be sustained unless this Court concludes that his findings are not supported by the evidence. The report is presumed to be correct. *Morris v. United Va. Bank*, 237 Va. 331, 337-38, 377 S.E.2d 611 (1989).

Under Va. Code § 64.1-172, the Commissioner of Accounts is required, within sixty days after the last adjournment of the hearing, to "make out an account of all such debts or demands as may appear to him to be sufficiently proved, stating separately those of each class." The standard of sufficient proof is not defined in the Code or by case law. Therefore, I think that the standard must be evidence that appears to the Commissioner of Accounts to be sufficient in order to prove the claim. Such a standard must vest considerable

discretion in the Commissioner of Accounts, even though I do not think that the standard is merely one of discretion.

The Commissioner of Accounts based his decision on the speculative nature of the endorsements on the checks in question, the lack of evidence of the circumstances surrounding any of the endorsements, and the resulting lack of credible evidence that David M. Wakefield was guilty of willful misconduct or gross negligence. He is not plainly wrong in this analysis.

None of the checks were written by David M. Wakefield. All the checks appear to have been written out of an account by NationsBank, and later, after a merger, Bank of America, as Agent for David M. Wakefield, Trustee for Ruth M. Wakefield Trust dated February 21, 1996. The Trust Agreement on which the Conservator bases her claim is dated February 20, 1996. This, along with Schedule A to the Trust Agreement, supports the conclusion of the Commissioner of Accounts that the nineteen disbursements came from non-trust assets. Therefore, any liability of David M. Wakefield for such disbursements must be based on the Durable Power of Attorney.

The issue presented by the Exceptions is whether the Conservator offered evidence sufficient to the Commissioner of Accounts to prove that David M. Wakefield was guilty of willful misconduct or gross negligence as to the nineteen disbursements.

At the argument on the Exceptions, the Conservator conceded that the checks payable to David M. Wakefield in 1997, 1998, and 1999 were proper. He had the authority under the Power of Attorney to make gifts to himself. She also conceded that the $10,000.00 gifts to Christopher Wakefield, Angela Wakefield, and David Wakefield, Jr., in 1997 were valid gifts. Each of the three is a child of David M. Wakefield and a descendant of Ruth M. Wakefield. He had the authority under the Power of Attorney to make gifts to her descendants.

As to the $10,000.00 gift to Nicholas Lockhart (the same person as Nicholas Wakefield) in 1997, the Conservator concedes that David M. Wakefield had the authority to make the gift because Nicholas is the son of Christopher Wakefield and, hence, a descendant of Ruth M. Wakefield. The Commissioner of Accounts did not have to accept the Conservator's hearsay statement that Nicholas never received the 10,000.00 gift. Further, the endorsement on the back of the check payable to Nicholas Lockhart is illegible. The Commissioner of Accounts is not plainly wrong in finding no willful misconduct or gross negligence as to the 1997 check for $10,000.00 payable to Nicholas Lockhart.

The remaining two $10,000.00 disbursements in 1997 contested by the Conservator were made to Stephen Hartwell, a friend of David M. Wakefield,

and Marilyn Wakefield, his wife. The Conservator asserts that David Wakefield had no authority as Attorney-in-Fact to make gifts to them because neither Mr. Hartwell nor Ms. Wakefield is a descendant of Ruth Wakefield. The Power of Attorney gave very broad powers to David Wakefield as Attorney-in-Fact. The Conservator offered no evidence of the circumstances surrounding the issuance of the checks (other than the hearsay notation on the checks and the Bank's records of "gift") or their endorsement. The Commissioner of Accounts is not plainly wrong in his determination of a lack of willful misconduct or gross negligence on the part of David Wakefield.

As to the seven checks drawn in 1998, the Conservator concedes that the disbursements to David Wakefield was a proper gift to himself and that the $10,000.00 disbursements to his three children were proper gifts. She contests the check payable to Nicholas Lockhart for the same reasons she contests the check written to him in 1997. Only the Conservator's hearsay statements that Nicholas did not receive the money were offered. The endorsement on the check is also not legible. As to the disbursements to Marilyn Wakefield and Susan England as non-descendants of Ruth M. Wakefield, the same analysis as to the 1997 checks to Stephen Hartwell and Marilyn Wakefield applies. There is no evidence of how the checks were issued or of the circumstances surrounding their endorsement. The Commissioner of Accounts is not plainly wrong in finding no willful misconduct or gross negligence.

As to the three checks written to the children of David M. Wakefield in 1999, the Executor concedes that he endorsed the three checks and deposited the total of $30,000.00 in his account. The Conservator points out that the Executor, in both her requests for the debts and demands hearing and her report of known, claims admits that the $30,000.00 is owed on the claim of Ruth M. Wakefield. However, I think that counsel for the Executor adequately explained that the admission was based on the theory that David Wakefield had made the disbursements as Trustee under the Trust Agreement dated February 20, 1996, which did not give him the authority to make gifts of trust assets. The Executor's position changed when it became apparent that any claim of Ruth Wakefield must be based on the Power of Attorney.

With the lack of evidence surrounding the issuance in 1999 of the three checks to the children of David Wakefield and the check to Marilyn Wakefield and the endorsement of each check, I cannot find that the Commissioner of Accounts is plainly wrong in finding a lack of evidence to support a finding that David Wakefield was guilty of willful misconduct or gross negligence.

It is important to note here that the Conservator offered no witnesses or other testimony under oath to support the claim. She offered a series of

documents and her own hearsay statements. The documents themselves do not sufficiently prove willful misconduct or gross negligence on the part of David M. Wakefield. If the Conservator elects to rest a large part of her claim upon her own statements of what others have told her as opposed to offering witnesses' testimony under oath, then the Conservator runs the risk that the Commissioner may place little weight, if any, on the hearsay statements.

The Commissioner of Accounts is not plainly wrong. The Conservator has not overcome the presumption of correctness of the report. I cannot substitute my judgment for the judgment of the Commissioner of Accounts.

The Exceptions are overruled, and the report of the Commissioner of Accounts of Debts and Demands is confirmed.

*Order Overruling Exceptions*
*to the Report of Debts and Demands*
*of the Commissioner of Accounts*

This matter came on to be heard upon the Report of Debts and Demands of William B. Hanes, Commissioner of Accounts, dated June 24, 2002, filed in the Clerk's Office of this Court on June 25, 2002, and upon the Exceptions to Commissioner's Report of Debts and Demands of Ruth M. Wakefield by her Conservator, Kyle Elizabeth Skopic, filed in the Clerk's office of this Court on July 9, 2002. After reviewing the evidence presented and considering the arguments of counsel on October 8, 2002, it is ordered that the aforesaid Exceptions be overruled, and the aforesaid Report of the Commissioner of Accounts is confirmed, for the reasons stated in the opinion letter dated October 21, 2002, incorporated herein. The Court certifies that is has made a personal examination of the Exceptions. Ruth M. Wakefield by her Conservator, Kyle Elizabeth Skopic, is deemed to except and object to this Order to the extent it is inconsistent with her Exceptions, and to do so based upon the arguments that she has presented to this Court, and all of those exceptions and objections are preserved without the necessity of them being noted on this order.